# Illinois Official Reports

## Supreme Court

---

*Illinois State Treasurer v. Illinois Workers' Compensation Comm'n*,
**2015 IL 117418**

---

Caption in Supreme Court:

ILLINOIS STATE TREASURER, Appellant, v. ILLINOIS WORKERS' COMPENSATION COMMISSION *et al.*, Appellees.

Docket No.

117418

Filed

April 16, 2015

Decision Under Review

Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Margaret Ann Brennan, Judge, presiding.

Judgment

Affirmed.

Counsel on Appeal

Lisa Madigan, Attorney General, of Springfield (Carolyn E. Shapiro, Solicitor General, and Mary C. Labrec, Assistant Attorney General, of Chicago, of counsel), for the People.

Matthew J. Belcher and Brian J. Wiehe, of Belcher Law Office, of Chicago, for appellee.

Justices

JUSTICE KARMEIER delivered the judgment of the court, with opinion.
Chief Justice Garman and Justices Freeman, Thomas, Kilbride, Burke, and Theis concurred in the judgment and opinion.

**OPINION**

¶ 1 This appeal presents a single question of law: when acting in his capacity as custodian of the Injured Workers' Benefit Fund (Fund), is the Illinois State Treasurer (the Treasurer) required to file an appeal bond pursuant to section 19(f)(2) of the Workers' Compensation Act (Act) (820 ILCS 305/19(f)(2) (West 2012)) in order to obtain judicial review of a decision by the Illinois Workers' Compensation Commission affirming an arbitrator's award of benefits to an injured worker? The appellate court answered this question in the affirmative and concluded that because the Treasurer had not filed the requisite appeal bond, the court lacked jurisdiction to consider the Treasurer's appeal. 2013 IL App (1st) 120549WC. We granted the Treasurer's petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Jan. 1, 2015). For the reasons that follow, we affirm.

¶ 2                                  BACKGROUND

¶ 3 Janina Zakarzecka worked as a home healthcare provider, caregiver, and companion to Joseph Meuse, an elderly man who was legally blind. Her job responsibilities included retrieving Meuse's mail and answering his front door. These duties required Zakarzecka to walk down a flight of stairs at Meuse's home.

¶ 4 On May 10, 2007, a deliveryman brought a package to the house for Mr. Meuse. For sanitary reasons, Mr. Meuse required Zakarzecka to wear special shoes while working inside the house and to change into her street shoes when answering the door or going outside. When Zakarzecka heard the deliveryman on May 10, she hurriedly attempted to change her shoes at the top of the stairwell so she could get to the front door before the deliveryman left. In the process, she fell down the stairs, breaking both wrists and suffering partial loss of the use of both hands.

¶ 5 Zakarzecka subsequently filed an application for adjustment of claim under the Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 2012)) to obtain benefits for her injuries. Zakarzecka's application named Meuse as the employer/respondent. While her claim was pending, Meuse passed away, so Zakarzecka amended the claim to add as respondents Meuse's estate and the individual who owned and operated the employment agency that had placed Zakarzecka with Meuse. Because Meuse lacked workers' compensation insurance at the time of her injury, Zakarzecka also looked to the Fund for relief.

¶ 6 The Fund is governed by section 4(d) of the Act (820 ILCS 305/4(d) (West 2012)) and serves as a source of payment for injured employees when the employer has failed to provide the coverage required by law and has failed to pay the benefits due to the injured employee. The money in the Fund comes from penalties and fines collected from employers, service or adjustment companies and insurance carriers pursuant to section 4(d) of the Act. The custodian of the Fund is the Illinois State Treasurer, who serves in that capacity *ex officio*. As required by section 4(d), Zakarzecka joined the Treasurer, in his role as the Fund's custodian, as an additional party respondent in the case. See 820 ILCS 305/4(d) (West 2012).

¶ 7 The matter proceeded to a hearing before an arbitrator for the Illinois Workers' Compensation Commission. The arbitrator found that Zakarzecka's accident arose out of and in the course of her employment with Meuse and awarded her temporary total disability benefits, medical expenses, and compensation for the permanent and partial loss of both of her

hands. Under the terms of the decision, an award was made to Zakarzecka and against the Fund "to the extent permitted and allowed under § 4(d) of the Act, in the event of the failure of Respondent-Employer to pay the benefits due and owing [her]."

¶ 8    The Treasurer, as the Fund's custodian, appealed the arbitrator's decision to the Commission. The Commission unanimously affirmed and adopted the decision rendered by the arbitrator. Acting again as custodian of the Fund, the Treasurer then sought judicial review of the Commission's decision in the circuit court of Cook County pursuant to section 19(f) of the Act (820 ILCS 305/19(f) (West 2012)).

¶ 9    The circuit court confirmed the Commission's ruling. The Treasurer subsequently sought further review of the Commission's decision in the appellate court. Initially the appellate court reversed the Commission's award of benefits based on its determination that Zakarzecka had failed to present evidence supporting a reasonable inference that her injuries arose out of a risk associated with her employment. Following that ruling, however, Zakarzecka filed a timely petition for rehearing arguing, for the first time, that the courts lacked jurisdiction to consider the Treasurer's appeal.

¶ 10    Zakarzecka's jurisdictional challenge was premised on two alternative grounds. First, she contended that her claim under the Fund was actually against the State of Illinois and the award in her favor was therefore not subject to any judicial review pursuant to section 19(f)(1) of the Act (820 ILCS 305/19(f)(1) (West 2012)). Alternatively, Zakarzecka argued that judicial review was barred by section 19(f)(2) of the Act because the Treasurer had not filed an appeal bond, a statutory prerequisite for invoking the circuit court's jurisdiction. See 820 ILCS 305/19(f)(2) (West 2012). Believing that both of these arguments raised issues of first impression, the appellate court ordered the State to respond to Zakarzecka's petition and allowed Zakarzecka to file a reply.

¶ 11    Following the additional briefing, the appellate court rejected the argument that Zakarzecka's claim was against the State and therefore not subject to judicial review under section 19(f)(1) of the Act. The appellate court concluded, however, that under the plain terms of section 19(f)(2), the Treasurer was required to post a bond if he wished to seek judicial review, that the statutory bond requirement was jurisdictional, and that because no appeal bond had been filed in this case, the courts lacked subject matter jurisdiction to hear the Treasurer's appeal. The appellate court therefore withdrew its prior ruling in the case and dismissed the Treasurer's appeal for lack of jurisdiction. 2013 IL App (1st) 120549WC, ¶¶ 22-32. The Treasurer now challenges that judgment, arguing that it should be exempt from the normal bond requirement of section 19(f)(2) and that the appellate court's dismissal of its appeal for lack of jurisdiction should therefore be reversed.

¶ 12                                    ANALYSIS

¶ 13    Whether a court has jurisdiction to review an administrative decision presents a question of law. We review such questions *de novo*. *Board of Education of Roxana Community School District No. 1 v. Pollution Control Board*, 2013 IL 115473, ¶ 17. *De novo* review is also appropriate in this case because resolution of the jurisdictional question turns solely on the construction of section 19(f) of the Act (820 ILCS 305/19(f)(2) (West 2012)), and statutory construction is likewise a question of law. *People ex rel. Director of Corrections v. Booth*, 215 Ill. 2d 416, 423 (2005).

¶ 14    Illinois courts are courts of general jurisdiction and enjoy a presumption of subject matter jurisdiction. *Gruszeczka v. Illinois Workers' Compensation Comm'n*, 2013 IL 114212, ¶ 13. That presumption is inapplicable, however, where administrative proceedings are involved. Illinois courts are empowered to review administrative actions only "as provided by law." Ill. Const. 1970, art. VI, § 6 (appellate court), § 9 (circuit court). When the legislature has, through law, prescribed procedures for obtaining judicial review of an administrative decision, a court is said to exercise "special statutory jurisdiction" when it reviews an administrative decision pursuant to that statutory scheme. *People ex rel. Madigan v. Illinois Commerce Comm'n*, 2014 IL 116642, ¶ 10. Special statutory jurisdiction is limited by the language of the act conferring it. A court has no powers from any other source. A party seeking to invoke a court's special statutory jurisdiction must therefore comply strictly with the procedures prescribed by the statute. If the mode of procedure set forth in the statute is not strictly pursued, no jurisdiction is conferred on the court. *Id.*

¶ 15    It is well established that these principles are fully applicable to proceedings seeking judicial review of decisions by the Workers' Compensation Commission. In such proceedings, the jurisdiction of the courts is never presumed. *Arrington v. Industrial Comm'n*, 96 Ill. 2d 505, 508 (1983). To the contrary, in order to vest the courts with jurisdiction to review Commission decisions, strict compliance with the provisions of the Act is necessary and must affirmatively appear in the record. *Id.*; *Gruszeczka v. Illinois Workers' Compensation Comm'n*, 2013 IL 114212, ¶ 13; *Daugherty v. Industrial Comm'n*, 99 Ill. 2d 1, 5 (1983). Accordingly, our analysis in the case before us must focus on determining precisely what the Act requires in order to invoke the courts' jurisdiction and then evaluating whether those requirements have been satisfied. *Jones v. Industrial Comm'n*, 188 Ill. 2d 314, 320 (1999).

¶ 16    Judicial review of decisions by the Workers' Compensation Commission is governed by section 19(f) of the Act (820 ILCS 305/19(f) (West 2012)). Subsection 19(f)(1) provides that except in certain circumstances not relevant here, decisions of the Commission in cases involving claims against the State of Illinois are not subject to judicial review at all. Subsection 19(f)(2) specifies that to initiate an appeal in those cases where review *is* available, a party against whom the Commission has rendered an award for the payment of money must "file with the clerk of the court a bond conditioned that if he shall not successfully prosecute the review, he will pay the award and the costs of the proceedings in the courts." 820 ILCS 305/19(f)(2) (West 2012).

¶ 17    In the case before us, the Treasurer agrees with the appellate court's holding that Zakarzecka's claim does not constitute a claim against the State. He must agree with that determination because otherwise there would be no dispute that his efforts to obtain judicial review of the Commission's award of benefits would be precluded by section 19(f)(1) of the Act. The sole contention advanced by the Treasurer is that the appellate court erred when it concluded that his failure to file the appeal bond specified by section 19(f)(2) was a jurisdictional barrier which precluded the courts from entertaining his appeal.

¶ 18    The basic principles applicable to this dispute are straightforward. Consistent with the principles of special statutory jurisdiction applicable to these proceedings, filing a bond as set forth in section 19(f)(2) of the Act is a prerequisite to invoking the reviewing court's subject matter jurisdiction. In the absence of a bond which conforms to the statute's requirements, the court has no jurisdiction to review the Commission's decision (*Firestone Tire & Rubber Co. v.*

*Industrial Comm'n*, 74 Ill. 2d 269, 272 (1979); see *Freedom Graphic Systems, Inc. v. Industrial Comm'n*, 345 Ill. App. 3d 716, 719 (2003); *Kavonius v. Industrial Comm'n*, 314 Ill. App. 3d 166, 169 (2000)) and the appeal must be dismissed (*Coultas v. Industrial Comm'n*, 31 Ill. 2d 527, 528 (1964); *Securitas, Inc. v. Illinois Workers' Compensation Comm'n*, 395 Ill. App. 3d 1103, 1104 (2009)).

¶ 19    The Treasurer does not contest these principles as a general proposition. His position is simply that they should not apply to him. In the Treasurer's view, construing the statute to subject him to the normal bond requirements others must meet is not supported by the language, purpose or history of the statute and will result in consequences which the legislature could not have intended.

¶ 20    The appellate court rejected the Treasurer's position and so must we. When construing the provisions of section 19(f)(2), we are bound to follow the same cardinal rule that governs our inquiry whenever we are called upon to interpret a statute. That rule, to which all other rules and canons are subordinate, is to ascertain and give effect to the true intent of the legislature. *People ex rel. Director of Corrections v. Booth*, 215 Ill. 2d 416, 423 (2005).

¶ 21    While the Treasurer offers various theories as to what the legislature may or may not have been thinking when it enacted section 19(f)(2) of the Act, it is well established that the best evidence of legislative intent is the language used in the statute itself. That language must be given its plain, ordinary and popularly understood meaning. *Id.* If the statutory language is clear, it will be given effect without resort to other aids for construction. *Gruszeczka v. Illinois Workers' Compensation Comm'n*, 2013 IL 114212, ¶ 12. Courts are not at liberty to depart from the plain language and meaning of a statute by reading into it exceptions, limitations or conditions that the legislature did not express. *Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc.*, 158 Ill. 2d 76, 83 (1994).

¶ 22    Judicial review of decisions by the Workers' Compensation Commission is commenced by the issuance of summons by the circuit court to the Commission. 820 ILCS 305/19(f)(1) (West 2012). Section 19(f)(2) of the Act clearly and unequivocally states that:

> "[n]o such summons shall issue unless the one against whom the Commission shall have rendered an award for the payment of money shall upon the filing of his written request for such summons file with the clerk of the court a bond conditioned that if he shall not successfully prosecute the review, he will pay the award and the costs of the proceedings in the courts." 820 ILCS 305/19(f)(2) (West 2012).

¶ 23    There is no dispute that the Commission rendered an award against the Fund, nor is there any dispute that neither the Fund nor the Fund's custodian, *i.e.*, the Treasurer, filed the requisite bond when the Treasurer requested that the clerk of the circuit court issue summons to the Commission. While the statute does go on to enumerate various entities which are exempt from the bond requirement, that list includes only counties, cities, towns, townships, incorporated villages, school districts, bodies politic or municipal corporations against whom the Commission shall have rendered an award for the payment of money. 820 ILCS 305/19(f)(2) (West 2012). Neither the Treasurer, in his capacity as *ex officio* custodian of the Fund, nor the Fund itself, is mentioned.

¶ 24    Because the filing of a bond is clearly required in order to invoke the court's jurisdiction and initiate judicial review, because no such bond was filed here, and because neither the Fund nor the Fund's custodian are among the entities expressly exempted from the bond

requirement, we agree with the appellate court that this proceeding for judicial review must be dismissed for lack of jurisdiction. To hold otherwise would require us to ignore the plain and unambiguous language of the statute and read into it an exception or limitation which the legislature did not express. As previously indicated, that is something we are not permitted to do. *Skokie Castings, Inc. v. Illinois Insurance Guaranty Fund*, 2013 IL 113873, ¶ 38.

¶ 25    While this would seem to settle the matter, the Treasurer takes a different view. He contends that the law is not as straightforward as we would have it and that, contrary to our reading, the language of section 19(f)(2) is actually ambiguous. It is ambiguous according to him because "the plain language of section 19(f)(2) supports another interpretation of the bond requirement: that it is specifically directed toward employers and insurers," and there is nothing in the statute which reflects an intent to include the Treasurer.

¶ 26    We reject the Treasurer's argument because it is incompatible with the principles of statutory interpretation which must guide our analysis and improperly attempts to inject ambiguity into the statute where none exists. A statute is considered to be ambiguous when it is capable of being understood by reasonably well-informed persons in two or more different senses. *Sangamon County Sheriff's Department v. Illinois Human Rights Comm'n*, 233 Ill. 2d 125, 136 (2009). That situation is not before us here.

¶ 27    The terms employer and insurer are used throughout the Act, including section 19. Had the legislature intended to confine the bond requirement in section 19(f)(2) to those two specific groups, it could easily have done so by using those same terms. But that is not the language it chose. Instead, it drafted the law more broadly to specify that, except for the particular government entities enumerated in the law, bond must be posted by "the one against whom the Commission shall have rendered an award for the payment of money" as a prerequisite to issuance of summons and invocation of the court's jurisdiction. 820 ILCS 305/19(f)(2) (West 2012).

¶ 28    Where, as here, the legislature uses certain language in some instances and wholly different language in another, settled rules of statutory construction require us to assume different meanings or results were intended. *Nelson v. Union Wire Rope Corp.*, 31 Ill. 2d 69, 100 (1964). Moreover, no rule of construction authorizes us to declare that the legislature did not mean what the plain language of the statute imports (*Illinois Power Co. v. Mahin*, 72 Ill. 2d 189, 194 (1978)), nor may we rewrite a statute to add provisions or limitations the legislature did not include (*Relf v. Shatayeva*, 2013 IL 114925, ¶ 29). That is particularly true in cases such as this involving statutory jurisdiction, the provisions of which must be strictly adhered to and which may not be extended by implication. *Graham v. People*, 135 Ill. 442, 443-44 (1890). Because the Fund was unquestionably "one against whom the Commission shall have rendered an award for the payment of money" within the plain language of the terms of section 19(f)(2), as written and was not listed among the entities exempt from the bond requirement, and because the Fund can only act through its custodian, the Treasurer, we must therefore conclude that the Treasurer, as custodian of the Fund, was obligated to post a bond on the Fund's behalf in order to initiate an appeal.

¶ 29    The Treasurer thinks it anomalous that the legislature would exempt from the bond requirement cities and the various other governmental entities set forth in section 19(f)(2) of the Act, yet require him to post a bond. The Treasurer is mistaken on this score as well. The Treasurer is treated differently because, in this context, he *is* different. The entities enumerated

in the statute will qualify as "one against whom the Commission shall have rendered an award for the payment of money" only when they are the actual employer. If the Treasurer were in this case by virtue of being Zakarzecka's employer, he would not be subject to the bond requirement either. He could not be, because a workers' compensation claim asserted by an employee of the Treasurer would constitute a claim against the State itself. Under the law, workers' compensation claims against the State are not even subject to review by the courts except in the case of claims by current and former employees and appointees of the Commission, a circumstance not present here. 820 ILCS 305/18.1 (West 2012). But in this case, the Treasurer is not an employer, and the award was not made against him in any such capacity. It was not made against him at all. The "one against whom the Commission shall have rendered an award for the payment of money" in this case was the Fund. The Treasurer is involved in the litigation solely by virtue of his responsibility as the Fund's custodian. See 820 ILCS 305/4(d) (West 2012). That is a function for which there is no analog among the entities exempted by section 19(f)(2).

¶ 30    We also reject the notion that the failure to exempt the Fund or the Treasurer, as custodian of the Fund, from the bond requirement was simply an oversight by the legislature. That argument might have some validity if the Treasurer could point to other instances in which the General Assembly did specifically exempt special funds, or the Treasurer, as custodian of such funds, from jurisdictional appeal bond requirements of the type before us here. The Treasurer, however, has not done so. Based on the materials before us, we have no basis for concluding that the exemption was "palpably omitted," nor is there any sense in which it could be fairly claimed that adding an exemption for the Fund or the Treasurer as custodian of the Fund, "is necessary to prevent the legislative purpose from failing in one of its material aspects." (Internal quotation marks omitted.) *Continental Illinois National Bank & Trust Co. of Chicago v. Illinois State Toll Highway Comm'n*, 42 Ill. 2d 385, 402 (1969). Under these circumstances, we will not attribute the absence of an exemption to legislative oversight.

¶ 31    We likewise reject the Treasurer's attempt to find support for his position in cases which excused the State from having to pay court costs and analogous litigation-related expenses. That is so for numerous reasons. As an initial matter, the authorities upon which the Treasurer relies, including *Department of Revenue v. Appellate Court of Illinois, First District*, 67 Ill. 2d 392 (1977), *City of Springfield v. Allphin*, 82 Ill. 2d 571 (1980), and *In re Special Education of Walker*, 131 Ill. 2d 300 (1989), involved proceedings in which the State itself was a party. In this case, as we have repeatedly pointed out, the Treasurer's appeal presupposes that the claim at issue is *not* against the State. Indeed, it is only because the claim is against the Fund rather than the State itself that the Treasurer, in his capacity as custodian of the Fund, can seek judicial review at all.

¶ 32    We further note that those decisions which have excused the State from the obligation to pay court costs or to post bonds to secure the payment of court costs have been based on considerations of sovereign immunity. See *Department of Revenue v. Appellate Court*, 67 Ill. 2d at 394-96. Sovereign immunity cannot come into play here, however, for the State has expressly elected to subject itself to the provisions of the Act (see 820 ILCS 305/1(a)(1), (2) (West 2012)), thus waiving its immunity with regard to workers' compensation matters.

¶ 33    This waiver of immunity is not absolute, but in those limited instances where the legislature wished to preserve its immunity and exempt the State from the normal requirements

of the workers' compensation law, it did so specifically. See 820 ILCS 305/19(f)(1), (g) (West 2012). No exemption was created for the State or for the Treasurer of the State when acting as custodian of the Fund, with respect to the requirement that a bond be posted in order to appeal. Accordingly, even if the interests of the State were implicated in proceeding before us, sovereign immunity principles would offer no shield for the Treasurer with respect to his obligation, as custodian of the Fund, to comply with section 19(f)(2)'s statutory bond requirements. See *Martin v. Giordano*, 115 Ill. App. 3d 367, 370 (1983) (cited with approval in *In re Special Education of Walker*, 131 Ill. 2d 300, 305 (1989)).

¶ 34    In addition, court costs are qualitatively different than the bond requirement imposed by section 19(f)(2). Court costs are taxed by the court and pertain to the expense of operating and utilizing the judicial system. Accordingly, when one taxes costs against the State, taxpayers are in effect being charged for a system they are already paying to support. Section 19(f)'s bond requirement, by contrast, serves a much broader purpose. It goes beyond insuring payment of costs and provides something more substantial: security to the injured employee that the party seeking review will pay the amounts due under the Commission's award if the appeal is unsuccessful. See *Residential Carpentry, Inc. v. Kennedy*, 377 Ill. App. 3d 499, 504 (2007). That protection raises no concerns regarding double charging taxpayers for support of the judicial system.

¶ 35    Furthermore, where the legislature wishes to excuse the State or other governmental entities from filing and other fees imposed by the circuit court in connection with litigation, it knows how to do so and has done so expressly. See 705 ILCS 105/27.2a(dd), 27.1a(dd), 27.2(dd) (West 2012). There is no corresponding provision in the Act which excuses the Treasurer, in his capacity as custodian of the Fund, from having to post the appeal bond required by section 19(f)(2).

¶ 36    Section 19(f)'s bond requirement is distinguishable in another way as well. The law permits waiver of costs in some cases (see, *e.g.*, 735 ILCS 5/5-105 (West 2012); Ill. S. Ct. R. 298 (eff. Sept. 25, 2014)), and in civil matters where an appeal is prosecuted by public entities or public officers acting in their official capacity for the benefit of the public, the judgment under appeal may be stayed without requiring that bond or security be given (Ill. S. Ct. R. 305(i) (eff. July 1, 2004)). Proceedings for judicial review under the Act, however, are possible only by virtue of the court's special statutory jurisdiction. Under the clear line of authority set forth earlier in this opinion regarding such jurisdiction, strict compliance with the statute's terms is therefore required before the courthouse doors will even open. Those terms require posting of an appeal bond. No principle of law permits us, through judicial fiat, to loosen, alter or waive the clear and unambiguous jurisdictional requirements imposed by the legislature. If the law is to be changed in this regard, it is up to the General Assembly to change it.

¶ 37    Another set of arguments advanced by the Treasurer pertains to practical aspects of the bond requirement. He complains, for example, of difficulty in ascertaining how much the bond should be and how it should be paid for, *i.e.*, is the money for the bond to come from the appropriation for his office or from the Fund itself? He asserts that the bond requirement does not provide the same benefits for claimants receiving awards against the Fund as it does where a private employer is involved and that such claimants can be and are protected in other ways. He also argues that the bond requirement is actually unfair—even irrational—because, depending on the circumstances, it may afford greater protection to claimants whose awards

are appealed than claimants whose awards are not challenged. Zakarzecka, for her part, responds that the Treasurer's concerns are unfounded and that requiring him to comply with the statutory bond requirement, in his capacity as custodian of the Fund, will serve the purposes for which the bond requirement was created and will not result in any consequences the legislature did not intend.

¶ 38    We shall not address the specifics of the parties' respective arguments regarding these aspects of the bond requirement, because doing so is unnecessary to our disposition. Even if we agreed, for the sake of argument, that the bond requirement presented technical challenges for the Treasurer, that it might not be as efficacious as appeal bonds are in normal civil cases, and that it could even yield unfair or irrational results under particular circumstances, that would not be sufficient justification for us to excuse the Treasurer from complying with the clear and unambiguous statutory requirements established by the legislature in the case before us today.

¶ 39    To be sure, courts do have an obligation to construe statutes in a way that will avoid absurd, unreasonable, or unjust results (*Township of Jubilee v. State of Illinois*, 2011 IL 111447, ¶ 36), and should avoid interpretations that render statutes " 'insignificant, meaningless, inoperative, or nugatory.' " *Matsuda v. Cook County Employees' & Officers' Annuity & Benefit Fund*, 178 Ill. 2d 360, 366 (1997) (quoting *Pliakos v. Illinois Liquor Control Comm'n*, 11 Ill. 2d 456, 460 (1957)). At the same time, however, we must not forget that:

> "[t]o maintain the separation of the legislative and judicial branches and avoid compromising our fidelity to the text, we should be extremely reluctant to second-guess the clear language of legislation ***. [Citation.] Whenever a court disregards the clear language of legislation in the name of 'avoiding absurdity,' it runs the risk of implementing its own notions of optimal public policy and effectively becoming a legislature. Interpreting legislation to mean something other than what it clearly says is a measure of last resort, to avoid 'great injustice' or an outcome that could be characterized, without exaggeration, as an absurdity and an utter frustration of the apparent purpose of the legislation. [Citation.]" *Dusthimer v. Board of Trustees of the University of Illinois*, 368 Ill. App. 3d 159, 168-69 (2006).

¶ 40    None of the problems perceived by the Treasurer in this case rise to this level. There are other instances where the General Assembly has required the Treasurer to secure a bond in connection with the responsibilities it has imposed on him and his office (see 5 ILCS 365/7 (West 2012); 15 ILCS 505/1 (West 2012)), including service as *ex officio* custodian of particular funds (see 605 ILCS 10/24 (West 2012)). There is no reason he cannot likewise secure a bond on behalf of the Fund, as section 19(f)(2) mandates, when he elects to seek the aid of the judiciary to obtain review under the Act on the Fund's behalf. It cannot fairly be claimed that excusing him from compliance with the provisions of section 19(f)(2), as written, when acting in his capacity as the Fund's custodian, is necessary to avoid some "grave injustice." And while the Treasurer may dispute the practical benefits of holding him to the statute's bond requirement, there is no meaningful way the law's purposes will be frustrated simply by requiring him to follow its plain and unambiguous terms.

¶ 41    The main purpose of the Act is to provide financial protection for injured workers, and its provisions must be interpreted liberally to effectuate that purpose. *Cassens Transport Co. v. Illinois Industrial Comm'n*, 218 Ill. 2d 519, 524 (2006). Our decision today is fully consistent with these principles. If the legislature disagrees and believes that our construction of law is

one which it did not foresee or intend, it has every right to amend the law with respect to future cases. For now, we must apply the law as written, and as written, the appeal bond requirement applies to the Injured Workers' Benefit Fund.

¶ 42                                    CONCLUSION

¶ 43      For the foregoing reasons, the appellate court was correct when it concluded that the Treasurer, as custodian of the Fund, is required to post to an appeal bond pursuant to section 19(f)(2) in order to invoke the subject matter jurisdiction of the courts to review a decision entered by the Workers' Compensation Commission against the Fund. Because the Treasurer failed to post the requisite bond when he sought judicial review of the Commission's decision affirming the arbitrator's award of benefits to Zakarzecka in this case, the courts had no jurisdiction to entertain the Treasurer's appeal. The judgment of the appellate court, which vacated the circuit court's judgment and dismissed the Treasurer's appeal for lack of jurisdiction, is therefore affirmed.

¶ 44      Affirmed.